Rachael D. Lamkin (Cal Bar No. 246066)
Lamkin IP Defense
100 Pine St., Suite 1250
San Francisco, CA 94111
916.747.6091
RDL@LamkinIPDefense.com

*Attorney for Defendants Garmin International, Inc., Garmin USA, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA,

OAKLAND DIVISION

| | |
|---|---|
| **CELLSPIN SOFT, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**GARMIN INTERNATIONAL, INC., GARMIN USA, INC.**<br><br>Defendants. | CASE NO. 4:17-cv-05934-YGR<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>Date: March 6, 2018<br>Time: 2:00 p.m.<br>Dept.: Courtroom 1, 4th Floor<br>Judge: Hon. Yvonne Gonzalez Rogers |

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
PURSUANT TO RULE 12(C)**

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on March 6, 2018, at 2:00 p.m., or as soon thereafter as counsel may be heard by the above-titled Court, located at 1301 Clay Street, Oakland, CA 94612, Defendants Garmin International, Inc. and Garmin USA, Inc. (collectively, "Garmin") will and hereby do move the Court to find that U.S. Patent No. 9,258,698 is drawn to patent ineligible subject matter.  Garmin's motion is based on this Notice of Motion, the Memorandum of Points and Authorities in support thereof ("Motion"), the Declaration of Rachael Lamkin and exhibit attached thereto, any briefing filed by individual defendants in the Omnibus § 101 Motion, and any evidence and argument presented to the Court at the hearing.

## STATEMENT OF THE ISSSUE TO BE DECIDED

Whether U.S. Patent No. 9,258,698 is drawn to patent ineligible subject matter.

///
///
///

**DEFENDANTS' MOTION TO DISMISS
PURSUANT TO RULE 12(C)**

Pursuant to Federal Rule of Civil Procedure 12(c), Garmin respectfully moves this Court to find that US Patent No. 9,258,698 ("the '698 Patent") is drawn toward patent ineligible subject matter. *See* 35 U.S.C. § 101; Lamkin Decl., Exh. A.

### I.   THIS MOTION CAN BE CONSIDERED CONCURRENT WITH THE OMNIBUS SECTION 101 MOTION

Garmin files this Motion pursuant to Federal Rule of Civil Procedure ("Rule") 12(c). Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6). *Wolf v. Capstone Photography, Inc*., No. 2:13-CV-09573, 2014 U.S. Dist. LEXIS 156527, at *9 (C.D. Cal. Oct. 28, 2014) (*citing Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012)). As such, Garmin respectfully asks this Court to consider this Motion concurrent with the Omnibus § 101 Motion, to be filed today, January 16, 2018, pursuant to this Honorable Court's Order, Docket No. 24.[1]

### II.   INTRODUCTION

Plaintiff Cellspinsoft, Inc. ("Cellspin") has filed fourteen (14) lawsuits, asserting some combination of four related patents against each defendant. Each of the four Asserted Patents share the same title ("Automatic multimedia upload for publishing data and multimedia content"). Each are subject to a Terminal Disclaimer as their claims contain overlapping subject matter. Each in fact claim the same general subject matter: automatic collection, upload, and publications of data. Materially, each of the Asserted Patents admit that they merely automate processes and devices long in existence. *See*, *e.g*., '698, 1:55-62, 9:42-65. Critically, the Asserted Patents admit that, "the various methods and algorithms described herein may be implemented in a computer readable medium **appropriately programmed for general purpose computers** and computing devices." *Id*., at 10:15-19 (emphasis added.) The automation of abstract ideas in an environment of generic devices and "general purpose computers" is simply not patentable subject matter under Section 101. Specifically, the '698 Patent is drawn to patent ineligible subject matter. *See* 35 U.S.C. § 101.

---

[1] On January 10, 2018, the Court Clerk informed Garmin that Parties, such as Garmin, that had already answered should not join the Omnibus § 101 Motion but were free to file a Rule 12(c) motion. Lamkin Decl. ¶ 3. The Omnibus Motion addresses all four of the Asserted Patents but since the '698 Patent was not asserted against the author of the Omnibus Motion, Garmin files this Motion addressing the patent eligibility of the '698 Patent and respectfully asks that it be considered concurrent with the Omnibus § 101 Motion.

Notice of Motion & Motion To Dismiss

3

### III.     THIS MOTION IS TIMELY

Claim construction is not a prerequisite for a § 101 determination. *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("There is no requirement that claims construction be completed before examining patentability."). In fact, the United States Supreme Court decided one of the seminal Section 101 case, *Bilski v. Kappos*, 561 U.S. 593 (2010), without construing the claims therein. *See Ultramercial, LLC v. Hulu, LLC,* 657 F.3d 1323, 1325 (Fed. Cir. 2011) (noting same). Engaging in the § 101 calculus prior to claim construction is appropriate because the analysis involves a consideration of the claim terms under "broad subject matter categories". *Ultramercial* at 1326 ("because eligibility is a 'coarse' gauge of the suitability of broad subject matter categories for patent protection, claim construction may not always be necessary for a § 101 analysis.") (*quoting Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859, 869 (Fed. Cir. 2010), *citing Bilski v. Kappos*, 561 U.S. 593 (2010)).

In cases such as the one at-bar, "there are clear advantages to addressing section 101's requirements at the outset of litigation." *I/P Engine, Inc. v. AOL Inc.*, 576 Fed. App'x 982, 2014 U.S. App. LEXIS 15667, 2014 WL 3973501, at *12 (Fed. Cir. Aug. 15, 2014) (Mayer, J., concurring); *Wolf v. Capstone Photography, Inc.,* No. 2:13-CV-09573, 2014 U.S. Dist. LEXIS 156527, at *17 (C.D. Cal. Oct. 28, 2014). "Patent eligibility issues can often be resolved without lengthy claim construction, and an early determination that the subject matter of asserted claims is patent ineligible can spare both litigants and courts years of needless litigation." *Id*.

Here, Garmin asks this Honorable Court to consider the terms of the '698 Patent under "broad subject matter categories" such as: digital camera, internet, collecting and transferring data, and the like. *See* '698 Claim 1, *infra*. As such, "the basic character of a Section 101 dispute [should be] clear to the district court," and claim construction is not needed prior to a finding of patent ineligibility. *See, e.g., Cardpool, Inc. v. Plastic Jungle, Inc.,* 2013 U.S. Dist. LEXIS 9280, at *4 (N.D. Cal. Jan. 22, 2013) (when "the basic character of the claimed subject matter is readily ascertainable from the face of the patent" claim construction is not necessary); *A Pty Ltd. v. Facebook, Inc.*, No. 1-15-CV-156 RP, 2015 U.S. Dist. LEXIS 137396, at *12 (W.D. Tex. Oct. 8, 2015) (accord).

### IV.     CLAIMS INDISTINGUISHABLE FROM REPRESENTATIVE CLAIM 1 HAVE BEEN FOUND TO BE PATENT INELIGIBLE

In its § 101 calculus, the Court may consider a single "representative" claim where there is no

"meaningful argument for the distinctive significance of any claim limitations other than those included" in the representative claim. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1352 (Fed. Cir. 2016); *Intellectual Ventures I LLC v. Erie Indem. Co.*, No. 2017-1147, 2017 U.S. App. LEXIS 22060, at *14 (Fed. Cir. Nov. 3, 2017). Here, Claim 1 is representative of all claims in the '698 Patent:

> 1. A machine-implemented <u>method of media transfer</u>, comprising:
>
> for a digital camera device having a short-range wireless capability to connect with a cellular phone, wherein the cellular phone has access to the internet, <u>performing in the digital camera device</u>:
>
> <u>establishing a short-range paired wireless connection</u> <u>between the digital camera device and the cellular phone,</u> wherein establishing the short-range paired wireless connection comprises, the digital camera device cryptographically authenticating identity of the cellular phone;
>
> <u>acquiring new-media</u>, wherein the new-media is acquired after establishing the short-range paired wireless connection between the digital camera device and the cellular phone;
>
> <u>creating a new-media file</u> using the acquired new-media;
>
> <u>storing the created new-media file</u> in a first non-volatile memory of the digital camera device;
>
> <u>receiving a data transfer request</u> initiated by a mobile software application on the cellular phone, over the established short-range paired wireless connection, wherein the data transfer request is for the new-media file, and wherein the new-media file was created in the digital camera device before receiving the data transfer request; and
>
> <u>transferring the new-media file to the cellular phone</u>, over the established short-range paired wireless connection, wherein the cellular phone is configured to receive the new-media file, wherein the cellular phone is configured to store the received new-media file in a non-volatile memory device of the cellular phone, wherein the cellular phone is configured to use HTTP to upload the received new-media file along with user information to a user media publishing website, and wherein the cellular phone is configured to provide a graphical user interface (GUI) in the cellular phone, wherein the graphical user interface (GUI) is for the received new-media file and to delete the created new media file.

'698 Patent, Claim 1 (emphasis added).

By its very terms, the '698 is drawn toward a "method of data transfer" performed by a

generic digital camera, wherein the digital camera: (1) connects to a generic cell phone, (2) acquires new media, (3) creates a media file, (4) stores said file, (5) receives a data transfer request from the generic cell phone, and (6) transfers the data to the phone.  *See* Claim 1, *supra*; *see also* '698, 1:40-44 ("this invention relates to pairing a digital data capture device in conjunction with a mobile device for automatically publishing data and multimedia content on one or more websites simultaneously."). These operations have repeatedly been found to cover patent ineligible subject matter.  *See, e.g., TLI Communs. LLC v. AV Auto., L.L.C. (In re TLI Communs. LLC Patent Litig.),* 823 F.3d 607, 610 (Fed. Cir. 2016); *Content Extraction and Transmission LLC v. Wells Fargo Bank, National Ass'n,* 776 F.3d 1343, 1347 (Fed. Cir. 2014); *EasyWeb Innovations, LLC v. Twitter, Inc.,* 689 F. App'x 969, 971 (Fed. Cir. 2017); *Affinity Labs of Texas, LLC v. DIRECTV, LLC,* 838 F.3d 1253, 1262 (Fed. Cir. 2016); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1093-95 (Fed. Cir. 2016); *Wolf v. Capstone Photography, Inc., No*. 2:13-CV-09573, 2014 U.S. Dist. LEXIS 156527, at *36 (C.D. Cal. Oct. 28, 2014).

## V.  THE '698 PATENT IS DRAWN TO PATENT INELIGIBLE SUBJECT MATTER

### A. The '698 Claims Are Drawn To Abstract Ideas Carried Out By Generic Devices

The § 101 or "*Alice/Mayo*" calculus involves a two-step inquiry.  *TLI Communs. LLC v. AV Auto., L.L.C. (In re TLI Communs. LLC Patent Litig.),* 823 F.3d 607, 611 (Fed. Cir. 2016) (*citing Mayo Collaborative Servs. v. Prometheus Labs., Inc.,* 132 S. Ct. 1289, 1293, 182 L. Ed. 2d 321 (2012), *Alice Corp. Pty. Ltd. v. CLS Bank Int'l,* 134 S. Ct. 2347, 2355, 189 L. Ed. 2d 296 (2014)).  At step one, "[w]e must first determine whether the claims at issue are directed to a patent ineligible concept," such as an abstract idea.  *TLI Commins*., at 611 (*quoting Intellectual Ventures I LLC v. Capital One Bank (USA),* 792 F.3d 1363, 1369 (Fed. Cir. 2015) (*quoting Alice,* 134 S. Ct. at 2356)). "At step one of the *Alice* framework, it is often useful to determine the breadth of the claims in order to determine whether the claims extend to cover a 'fundamental . . . practice long prevalent in our system . . . .'"  *Intellectual Ventures I LLC v. Capital One Bank (USA),* 792 F.3d 1363, 1369 (Fed. Cir. 2015) (*quoting Alice*, 134 S. Ct. at 2356).  "But in determining whether the claims are directed to an abstract idea, we must be careful to avoid oversimplifying the claims because "[a]t some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas[.]" *Alice,* 134 S. Ct. at 2354 (*quoting Mayo,* 132 S. Ct. at 1293).  "However, not every claim that recites concrete, tangible components escapes the reach of the abstract-idea inquiry." *TLI Communs*., at 611 (*citing Alice,* 134 S. Ct. at 2360 (claims that recite general-purpose computer

components are nevertheless directed to an abstract idea); *Content Extraction*, 776 F.3d at 1347 (claims reciting a scanner are nevertheless directed to an abstract idea); *Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.,* 811 F.3d 1314, 1324-25 (Fed. Cir. 2016) (claims reciting an interface, network, and a database are nevertheless directed to an abstract idea).

Here, as noted above, the '698 claims a "method of data transfer" performed by a generic digital camera, wherein the digital camera: (1) connects to a generic cell phone, (2) acquires new media, (3) creates a media file, (4) stores said file, (5) receives a data transfer request from the generic cell phone, and (6) transfers the data to the phone. *See* Claim 1, *supra*; *see also* '698, 1:40-44. These claims are the very epitome of a "generic environment in which to carry out [an] abstract idea." *TLI Communs*. at 611 ("While claim 17 requires concrete, tangible components such as 'a telephone unit' and a 'server,' the specification makes clear that the recited physical components merely provide a generic environment in which to carry out the abstract idea of classifying and storing digital images in an organized manner.")

Two cases are particularly instructive here, *TLI Communs. LLC v. AV Auto., L.L.C. (In re TLI Communs. LLC Patent Litig.),* 823 F.3d 607, 611 (Fed. Cir. 2016) and *Wolf v. Capstone Photography, Inc.*, No. 2:13-CV-09573, 2014 U.S. Dist. LEXIS 156527 (C.D. Cal. Oct. 28, 2014).

In *TLI Communs*. the claim at-issue disclosed:

17. A method for recording and administering digital images, comprising the steps of:

<u>recording images</u> using a digital pick up unit in a telephone unit,

<u>storing the images</u> recorded by the digital pick up unit in a digital form as digital images,

<u>transmitting data including at least the digital images</u> and classification information to a server, wherein said classification information is prescribable by a user of the telephone unit for allocation to the digital images,

<u>receiving the data</u> by the server,

<u>extracting classification information</u> which characterizes the digital images from the received data, and

<u>storing the digital images in the server</u>, said step of storing taking into consideration the classification information.

*TLI Communs*., at 610 (emphasis added).

As in the case at-bar, the patent in *TLI Communs*. was directed toward the acquisition, storing, and transmission of digital images using generic devices such as cameras and phones.  The Federal Circuit held that said claims were necessarily abstract as they "merely provide a generic environment in which to carry out the abstract idea of classifying and storing digital images in an organized manner." *Id*., at 612.  The same result is compelled here.

*Wolf v. Capstone Photography, Inc*., No. 2:13-CV-09573, 2014 U.S. Dist. LEXIS 156527 (C.D. Cal. Oct. 28, 2014) is also highly instructive.  In *Wolf*, Claim 12 read:

> 12. The process of claim 1, including the step of providing a <u>digital camera electronically connected to the server</u> for immediate download of photographs from the event to the server.

Where Claim 1 read:

> 1. A process providing event photographs of a sporting event for inspection, selection and distribution via a computer network, comprising the steps of:
>
> > taking photographs of at least one participant of a sporting event along at least one point of a course or field thereof;
> >
> > associating identifying data with each photograph taken, wherein the identifying data is selected from at least one of: a number corresponding to a number worn by a participant, a participant's name, a code acquired from a component worn by a participant, and a date and time, including hour and minute the photograph was taken;
> >
> > <u>informing the sporting participants of the identifying data</u>;
> >
> > <u>transferring the photographs to a computer network server</u>;
> >
> > <u>cataloging each of the photographs in a web-site server</u> according to the identifying data;
> >
> > <u>accessing the server</u> at a location other than the sporting event and searching for a photograph of a particular sporting event participant utilizing the identifying data; and
> >
> > displaying the photograph of the sporting event participant for inspection and ordering.

*Wolf*, at *4 (*citing* US Patent No. 6,985,875, Claim 12; emphasis added.)

On claims similar to the '698 Patent, the *Wolf* court found that "the dependent claims recite generic technological categories such as a 'computer network server,' a 'web-site server,' and a 'digital camera,' [but] the most specific piece of technology recited by the claims is still generic[.]

Under *Alice*, these recitations of generic technology are insufficient to confer patent eligibility." *Id*. at *36-37. (*citing Alice*, 134 S. Ct. at 2358.)

As in *TLI Communs*. and *Wolf*, the claims of the '698 Patent contain abstract operations such as a method of acquiring, storing and transferring data.  It is beyond dispute that these operations (the transfer of information or data) are abstract.  *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) ("Information as such is an intangible."); *see also id.* (collecting cases).  And, as in *TLI Communs*. and *Wolf*, although the claims contain more than the abstract idea of collecting, storing, and transferring information, the "something more" are mere generic devices which cannot, as a matter of law, elevate the abstractions to patentable subject matter.  *TLI Communs.*, at 614 ("While claim 17 requires concrete, tangible components such as 'a telephone unit' and a 'server,' the specification makes clear that the recited physical components merely provide a generic environment in which to carry out the abstract idea of classifying and storing digital images in an organized manner," and therefor remain abstract.); *Wolf*, at *34 ("the fact that 'taking photographs' is involved is of no help in narrowing the claims to patentable subject matter. And if the remaining 'concrete' steps are sufficient to remove the patents in suit from the realm of an abstract idea, it seems any process involving computers would pass the test.")

The '698 Patent is drawn toward the abstract idea of collecting, storing, and transferring "media" or data using generic devices; *i.e.,* it is drawn toward moving information and, as such, is abstract.

### B. The Claims Of The '698 Fail To Contain An Inventive Step

The second step of the *Alice/Mayo* calculus asks whether there is something inventive that lifts the patent claims from abstraction into patentability or whether, as in *Alice*, these steps can be "carried out by existing computers long in use."  *Alice*, at 2357.  At step two, courts ask whether there are "specific improvements in the recited technology that go beyond 'well-understood, routine, conventional activities' and render the invention patent-eligible."  *BASCOM Glob. Internet Servs. v. AT&T Mobility LLC,* 827 F.3d 1341, 1348 (Fed. Cir. 2016).  In other words, at this step, we ask whether "the specific improvements in the recited computer technology go beyond 'well-understood, routine, conventional activit[ies]' and render the invention patent-eligible." *Id*. (*quoting Alice*, 134 S. Ct. at 2359.)  Put another way, whether the "digital camera device" or the "server" of the "media file" <u>are themselves</u> improvements upon earlier devices.  *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016) ("Here, the claims are not simply directed to any form of storing tabular

data, but instead are specifically directed to a self-referential table for a computer database.'); *id*. ("The specification also teaches that the self-referential table functions differently than conventional database structures.")

Here again, as in *TLI Communs*. and *Wolf*, the claims fail to contain an improvement in the devices themselves, and certainly—as the Asserted Patents admit—fail to contain an improvement beyond conventional devices that were already in existence. In fact, the Asserted Patents recommend the employment of generic, "ubiquitous," "pervasive" devices already in existence. '968, 9:42-65; 10:16-19; *see also, e.g., id*. at 9:42-43 ("the method and system disclosed herein may be implemented in technologies that are pervasive[.]") And, the Asserted Patents admit that their gift is mere automation of devices and processes already in existence:

> A user may need to capture and publish data and multimedia content on the internet in real time. Typically, the user would capture an image using a digital camera or a video camera, store the image on a memory device of the digital camera, and transfer the image to a computing device such as a personal computer (PC). In order to transfer the image to the PC, the user would transfer the image off-line to the PC, use a cable such as a universal serial bus (USB) or a memory stick and plug the cable into the PC. The user would then manually upload the image onto a website which takes time and may be inconvenient for the user. Therefore, there is a need for a method and system to utilize a digital data capture device in conjunction with a mobile device for <u>automatically detecting capture of data</u> and multimedia content, transferring the captured data and multimedia content to the mobile device<u>, and publishing the data and multimedia content on one or more websites automatically or with minimal user intervention</u>.

'698, 1:45-63 (emphasis added.)

In other words, by the '698 Patent's own admission, the only "invention" was the automation of processes already in existence, carried out by generic devices already in existence. That is not an inventive step. *See A Pty Ltd. v. Facebook, Inc.,* 149 F. Supp. 3d 732, 739 (W.D. Tex. 2016) (a patent that "merely automates an existing or conventional process" is not drawn to patent eligible subject matter.); *OIP Techs., Inc. v. Amazon.com, Inc.,* 788 F.3d 1359, 1363 (Fed. Cir. 2015) ("At best, the claims describe the automation of the fundamental economic concept of offer-based price optimization through the use of generic-computer functions. . . . But relying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible.")[2]

---

[2] Nor can the addition of simply more abstract ideas ("wireless transfer") or generic devices (e.g., GUIs) convert an abstract idea to an inventive one. *See TLI Communs*. at 611; '968 Claim 1.

## VI. CONCLUSION

The '698 claims a "method of data transfer" performed by a generic digital camera, wherein the digital camera: (1) connects to a generic cell phone, (2) acquires new media, (3) creates a media file, (4) stores said file, (5) receives a data transfer request from the generic cell phone, and (6) transfers the data to the phone. *See* Claim 1, *supra*; *see also* '698, 1:40-44. These claims are the very epitome of a "generic environment in which to carry out [an] abstract idea," and are therefore patent ineligible.

Respectfully submitted,

*Rachael D. Lamkin*

Rachael D. Lamkin
Lamkin IP Defense
100 Pine St. Suite 1250
San Francisco, CA 94111
916.747.6091
RDL@LamkinIPDefense.com

*Attorney for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of January, 2018, a true and accurate copy of the above and foregoing:

### NOTICE AND MOTION

### LAMKIN DECLARATION ISO

### US PATENT NO. 9,258,698

Was served upon Plaintiff's Counsel via electronic mail via the Court's CM/ECF system.

*Rachael D. Lamkin*
Rachael D. Lamkin